ACCEPTED
01-15-00067-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/1/2015 3:08:46 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00067-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/1/2015 3:08:46 PM
CHRISTOPHER A. PRINE
Clerk

**RESIDENTIAL CREDIT SOLUTIONS, INC.,**
*Appellant,*

**V.**

**MARTHA BURG,**
*Appellee.*

Appealed from the 281st Judicial District Court
of Harris County, Texas
Trial Court Cause No. 2013-47157

**APPELLANT'S BRIEF**

Nathan J. Milliron
State Bar No. 24030984
HUGHES WATTERS ASKANASE, L.L.P.
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
(713) 759-0818 (Telephone)
(713) 759-6834 (Facsimile)
nmilliron@hwa.com (Email)

ATTORNEY FOR APPELLANT

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT:**

Residential Credit Solutions, Inc.

**TRIAL AND APPELLATE COUNSEL FOR APPELLANT:**

Nathan J. Milliron
State Bar No. 24030984
Hughes Watters Askanase, LLP
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
(713) 759-0818 (Telephone)
(713) 759-6834 (Facsimile)
nmilliron@hwa.com (E-mail)

**APPELLEE:**

Martha Burg

**TRIAL AND APPELLATE COUNSEL FOR APPELLEE:**

Michael C. O'Connor
State Bar No. 15187000
O'Connor, Craig, Gould & Evans
2500 Tanglewilde, Suite 222
Houston, Texas 77063
(713) 266-3311 (Telephone)
(713) 953-7513 (Facsimile)
moconnor@oconnorcraig.com (E-mail)

1

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................4

TERMS AND ABBREVIATIONS USED WITHIN APPELLANT'S BRIEF..............................6

STATEMENT OF THE CASE............................................................................7

STATEMENT REGARDING ORAL ARGUMENT ....................................................8

ISSUE PRESENTED......................................................................................9

STATEMENT OF FACTS............................................................................... 10

STANDARD OF REVIEW.............................................................................. 15

SUMMARY OF ARGUMENT......................................................................... 16

ARGUMENT ............................................................................................ 17

1. The deed of trust lien sought to be foreclosed by RCS is not void pursuant to TEX. CIV. PRAC. & REM. C. § 16.035(d) because the original acceleration of the loan was abandoned. The trial court erred in granting summary judgment and holding that the deed of trust lien was void pursuant to TEX. CIV. PRAC. & REM. C. § 16.035(d). ................................................................17

   A. Foreclosure must occur within four years of acceleration....................17

   B. Acceleration can be unilaterally abandoned....................................18

   C. Acceleration was abandoned.....................................................19

   D. Statute of limitations was restarted upon abandonment of acceleration......22

   E. RCS' counter-claim for judicial foreclosure was timely and its lien is not void................................................................................22

PRAYER .................................................................................................. 24

CERTIFICATE OF COMPLIANCE ................................................................... 25

CERTIFICATE OF SERVICE ............................................................................. 25

APPENDIX ................................................................................................... 26

    A. TEX. CIV. PRAC. & REM. C. § 16.035.

    B. Stipulation Agreement dated July 20, 2009
       (Unexecuted by Burg)

    C. Stipulation Agreement dated July 20, 2009
       (Executed by Burg)

    D. Home Affordable Modification Trial Period Plan dated October 1, 2009

# INDEX OF AUTHORITIES

## Case Law

*Boren v. U.S. Nat. Bank Ass'n,*
    CIV.A. H-13-2160, 2014 WL 5486100 (S.D. Tex. Oct. 29, 2014)..................... 19

*Boren v. U.S. Nat. Bank Ass'n,*
    CIV.A. H-13-2160, 2014 WL 6892553 (S.D. Tex. Sept. 8, 2014) ............... 18, 19

*Clawson v. GMAC Mortgage, LLC,*
    3:12-CV-00212, 2013 WL 1948128 (S.D. Tex. May 9, 2013) ......................... 22

*Gen. Mills Restaurants, Inc. v. Texas Wings, Inc.,*
    12 S.W.3d 827 (Tex. App. 2000) ..................................................................... 15

*Holy Cross Church of God in Christ v. Wolf,*
    44 S.W.3d 562 (Tex. 2001) ............................................................................. 17

*Holy Cross Church of God in Christ,*
    44 S.W.3d, 566-567 ......................................................................................... 18

*Khan v. GBAK Properties, Inc.,*
    371 S.W.3d 347 (Tex. App. 2012) ........................................................ 17, 18, 22

*Kindred v. Con/Chem, Inc.,*
    650 S.W.2d 61 (Tex. 1983) ............................................................................. 15

*Lampasas v. Spring Ctr., Inc.,*
    988 S.W.2d 428 (Tex. App. 1999) .................................................................. 15

*Leonard v. Ocwen Loan Servicing, LLC,*
    CIV.A. H-13-3019, 2014 WL 4161769 (S.D. Tex. Aug. 19, 2014) ............. 19, 22

*Provident Life & Acc. Ins. Co. v. Knott,*
    128 S.W.3d 211 (Tex. 2003) ........................................................................... 15

*San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart,*
    94 Tex. 441, 61 S.W. 386 (1901) .................................................................... 18

**Statutes**

TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) ........................................ 13, 18, 22

**Rules**

Tex. R. Civ. P. 736 ................................................................................. 11, 13

## TERMS AND ABBREVIATIONS USED WITHIN APPELLANT'S BRIEF

| | |
|---|---|
| Appellant | Residential Credit Solutions, Inc. |
| Appellee | Martha Burg |
| Burg | Martha Burg |
| CR | Clerk's Record |
| RCS | Residential Credit Solutions, Inc. |
| Saxon | Saxon Mortgage Services, Inc. |

## STATEMENT OF THE CASE

Appellee Burg brought suit challenging Appellant RCS' right to foreclose on real property located in Harris County, Texas [CR 4-5, 25-27].

Following hearing, the court entered a final summary judgment in favor of Burg on September 12, 2014 [CR 155]. RCS filed its Motion for New Trial on October 10, 2014 [CR 158-161]. The Motion for New Trial was overruled as a matter of law on November 26, 2014. RCS timely filed its Notice of Appeal on December 10, 2014 [CR 165-166].

## STATEMENT REGARDING ORAL ARGUMENT

RCS suggests that this matter is appropriate for determination on the briefs and record without oral argument. If the Court believes that oral argument would assist, RCS requests the opportunity to present oral argument.

## ISSUE PRESENTED

I.    The deed of trust lien sought to be foreclosed by RCS is not void pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d) because the original acceleration of the loan was abandoned. The trial court erred in granting summary judgment and holding that the deed of trust lien was void pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d).

# STATEMENT OF FACTS

On March 30, 2007, Burg signed a Texas Home Equity Adjustable Rate Note in the original principal amount of $270,000.00 (the "Note"), bearing interest at the initial rate of 7.600% per annum [CR 99-103]. The Note was originally payable to Dallas Home Loans, Inc. [CR-99-103].

In connection with the Note, Burg signed a Texas Home Equity Security Instrument ("Security Agreement") covering real property described as:

> LOT EIGHT (8), IN BLOCK EIGHTEEN (18), OF REPLAT LETTERED "F" OF MEYERLAND, SECTION EIGHT (8), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 67, PAGE 68, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS. [CR 110-133]

The property is more commonly known as 5330 Dumfries Drive, Houston, Texas 77096 (the "Property") [CR 110-133]. The Property was pledged as collateral for payment of the Note. The Security Agreement was recorded under Clerk's File No. 20070256175 of the real property records of Harris County, Texas [CR 110-133].

The Note and Security Agreement were transferred to RCS. RCS is the current holder of the Note and is entitled to enforce the terms of the Note and Security Agreement.

Burg became delinquent in the payment of the Note by failing and refusing to pay the installment due on June 1, 2008 and all installments due after that date

10

[CR 97]. Pursuant to the Note and Security Agreement, Burg agreed to be liable for the debt, interest on the debt, and all costs, fees, advances, and expenses, including attorneys' fees, authorized under the terms of the Note and the Security Agreement [CR 99-103; 110-133].

On June 23, 2008, Saxon Mortgage Services, Inc., the prior mortgage servicer for the Note, caused a Notice of Default and Intent to Accelerate to be mailed to Burg. Burg did not cure her default.

On August 12, 2008, Saxon caused a Notice of Acceleration of Texas Non-Recourse Home Equity Loan to be mailed to Burg. Burg did not pay the accelerated loan balance.

On September 9, 2008, Saxon filed its Application for Expedited Foreclosure Proceeding Pursuant to Tex. R. Civ. P. 736 in cause number 2008-54797 styled *In re Order for Foreclosure Concerning Martha A. Burg and 5330 Dumfries Drive, Houston, Texas 77096*, in the 190th Judicial District Court of Harris County, Texas (the "First Foreclosure Action"). The First Foreclosure Action was ultimately dismissed for want of prosecution because the parties announced settlement.

In July 2009, Saxon sent Burg two proposed Stipulation Agreements (dated July 30, 2009) [CR 68-70; 71-73]. Burg does not acknowledge signing both Stipulation Agreements, but she does not dispute that she received both, after discussions with Saxon's representative (CR 39). Further, Burg admits that, ". . . I

11

signed and sent to Ms. Bell this second Stipulation Agreement, but I never made the initial payment or any other payment, provided for in this Stipulation agreement" [CR 39].

Burg would have the court believe that the Stipulation Agreement never went into effect because she did not make any payments; however, Burg neglects to address the fact that both Stipulation Agreements - sent to and admittedly received by her - show an unpaid principal balance of approximately $266,000.00 and only show a defaulted amount of approximately $39,000.00 [CR 68-70; 71-73].[1] These Stipulation Agreements provide unequivocal evidence that Saxon Mortgage Services, Inc. was not seeking the accelerated loan balance and instead had abandoned the August 12, 2008 acceleration. The Stipulation Agreements easily put Burg on notice that Saxon Mortgage Services, Inc. was not seeking to collect the full balance of the Note.

Later, on September 30, 2009, Burg executed a Home Affordable Modification Trial Period Plan and agreed to make monthly trial period plan payments of $1,747.03 in October 2009, November 2009, and December 2009 [CR 137-140].

---

[1] The copies of the Stipulation Agreements in the record, at CR 68-70, CR 71-73, and CR 134-136 are of poor quality and the exact figures cannot be discerned from the face of these documents.

On October 19, 2009, Burg made one payment toward the Home Affordable Modification Trial Period Plan [CR 97]. RCS accepted the October 19, 2009 payment [CR 97]. No further payments have been made [CR 97].

On February 19, 2013, RCS mailed a Notice of Default and Intent to Accelerate letter to Burg [CR 141-143]. Again, Burg did not cure her default [CR 97].

On April 26, 2013, RCS caused a Notice of Acceleration of Texas Non-Recourse Home Equity Loan to be mailed to Burg [CR 144-145]. Again, Burg did not pay the accelerated loan balance [CR 97-98].

On May 10, 2013, RCS filed its Application for Expedited Foreclosure Proceeding Pursuant to Tex. R. Civ. P. 736 in cause number 2013-28135 styled *In re Order for Foreclosure Concerning Martha A. Burg and 5330 Dumfries Drive, Houston, Texas 77096*, in the 281st Judicial District Court of Harris County, Texas (the "Second Foreclosure Action") [CR 4; 25]. The Second Foreclosure Action was dismissed on September 10, 2013, following the filing of this lawsuit.

On August 12, 2013, Burg filed this suit against RCS [CR 4-5]. Burg sought only a declaration that RCS' deed of trust lien on the Property, and thus its power of sale, are void pursuant to the limitations period contained in [TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d)] [CR 4-5, 25-27].

RCS answered and filed a counter-claim seeking judicial foreclosure of the Property [CR 7-14].

Burg filed her Traditional and No Evidence Motion for Summary Judgment on July 11, 2014 [CR 32-86]. RCS filed its Response to Burg's Traditional and No Evidence Motion for Summary Judgment on July 25, 2014 [CR 90-145]. Burg filed a Reply on July 28, 2014 [CR 146-154]. The Traditional and No Evidence Motion for Summary Judgment was set for hearing on August 1, 2014 [CR 87-88].

Following hearing, the court entered a final summary judgment in favor of Burg on September 12, 2014 [CR 155]. The court's judgment stated that, "the lien[] sought to be foreclosed by [RCS] [is] void pursuant to [TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d)]" [CR 155].

RCS filed its Motion for New Trial on October 10, 2014 [CR 158]. The Motion for New Trial was overruled as a matter of law on November 26, 2014.

This appeal followed with RCS timely filing its Notice of Appeal on December 10, 2014 [CR 165].

## STANDARD OF REVIEW

Appellate courts review summary judgments *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, the competent summary judgment evidence, if any, favorable to the non-movant is taken as true, and all reasonable inferences are drawn and doubts resolved in the non-movant's favor. *Id.* A fact is "material" only if it affects the outcome of the suit under governing law, and only those facts identified by the substantive law are considered material. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 433 (Tex. App. 1999)(Tex. App. – Houston [14th Dist.] 1999, no pet.); *see also Gen. Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832-33 (Tex. App. 2000). Even if a fact is material, it is "genuine" only if the evidence "is such that a reasonable jury could find the fact in favor of the non-moving party. *Id.* By the same token, if the evidence is not significant probative, the fact issue is not genuine. *Id.*; *accord Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

## SUMMARY OF THE ARGUMENT

The trial court's final summary judgment declaring that RCS' lien is void pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d) was improper and demands reversal.

It is undisputed that Saxon originally accelerated the loan's maturity by written letter dated August 12, 2008. Burg alleges that this acceleration would have made any effort to foreclose on her property barred by limitations after August 12, 2012, four years after the original acceleration.

RCS' lien is not void pursuant to the limitations period prescribed in TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(d) because the August 12, 2008 acceleration of the loan's maturity was clearly and unequivocally abandoned by the actions of the parties. Burg was provided with Stipulation Agreements, issued after the loan's original August 12, 2008 acceleration advising her of the defaulted, not the accelerated, loan balance. These Stipulation Agreements gave notice to Burg that the accelerated loan balance was not being pursued. In addition, Burg made a payment in October 2009 for less than the loan's matured balance. The payment was accepted by RCS.

RCS sent Burg a Notice of Default and Intent to Accelerate on February 19, 2013. This notice was followed up with a Notice of Acceleration of Texas Non-Recourse Home Equity Loan on April 26, 2013. This latest acceleration restarted the limitations period, allowing RCS to foreclose until April 26, 2017, four years

16

after the latest acceleration. Since RCS filed its counter-claim for judicial foreclosure on October 17, 2013, it was well inside of the four year limitations period.

## ARGUMENT

**I.** **The deed of trust lien sought to be foreclosed by RCS is not void pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 16.035(d) because the original acceleration of the loan was abandoned. The trial court erred in granting summary judgment and holding that the deed of trust lien was void pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 16.035(d).**

*A. Foreclosure Must Occur Within Four Years of Acceleration*

Texas law requires that, "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.035(a). Further, after the expiration of the four year limitations period, the real property lien and power of sale become void. Tex. Civ. Prac. & Rem. Code Ann. § 16.035(d); *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App. 2012).

The accrual of the cause of action occurs when the option to accelerate the maturity of the loan has been exercised. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). While accrual is a legal question, whether a noteholder has accelerated a loan's maturity is a fact question. *Holy Cross Church of God in Christ*, 44 S.W.3d, 568. Accordingly, as long as the maturity of the loan has been accelerated, one must seek to foreclose on a real property lien

17

within four years of the acceleration date or the property lien and power of sale become void.

There is no dispute that Saxon originally accelerated the maturity of Burg's loan on August 12, 2008 [CR 25-26, ¶5]. Burg contends that this acceleration started the four year limitations period articulated in TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a), requiring RCS to have initiated efforts to foreclose on the Property by August 12, 2012 [CR 26, ¶6]. Burg also contends that RCS' deed of trust lien on the Property is void because RCS did not foreclose or bring suit to foreclose on the Property by August 12, 2012 [CR 26, ¶6].

Burg neglects to acknowledge that the original August 12, 2008 acceleration was abandoned and the four year limitations period did not begin to run again until the latest acceleration effort, on April 26, 2013.

## B. *Acceleration Can Be Unilaterally Abandoned*

Texas courts have routinely held that parties can abandon acceleration of a loan's maturity. *Khan*, 371 S.W.3d, 356(*citing San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386 (1901)). Acceleration can be abandoned by the acceptance of payments. *Holy Cross Church of God in Christ*, 44 S.W.3d, 566-67(stating that a noteholder can abandon acceleration 'if the holder continues to accept payments without exacting any remedies available to it upon declared maturity'.). Acceleration can also be abandoned by providing account statements and mailing notices of intent to accelerate. *Boren v. U.S. Nat. Bank*

18

*Ass'n*, CIV.A. H-13-2160, 2014 WL 6892553 (S.D. Tex. Sept. 8, 2014)(S.D. Tex. 2014, recommendation adopted in relevant part, *Boren v. U.S. Nat. Bank Ass'n*, CIV.A. H-13-2160, 2014 WL 5486100 (S.D. Tex. Oct. 29, 2014)(*citing Leonard v. Ocwen Loan Servicing, LLC*, CIV.A. H-13-3019, 2014 WL 4161769, , *5 (S.D. Tex. Aug. 19, 2014)).

## C. *Acceleration Was Abandoned*

The acceleration of Burg's loan was clearly abandoned.

After Saxon originally accelerated the loan's maturity, on August 12, 2008, and filed the First Foreclosure Action, Saxon announced settlement and the First Foreclosure Action was dismissed.

Saxon engaged in communications with Burg about her loan [CR 39, ¶¶1-2]. Burg admits that, "In July 2009, I discussed with Sarah Bell, a representative of [Saxon], as to whether I could obtain a modification of my loan" [CR 39, ¶1]. Burg also acknowledges receiving two separate Stipulation Agreements from Saxon, "Ms. Bell initially prepared a Stipulation Agreement dated as of July 20, 2009, but I refused to sign it because the payments, including a payment of $42,444.95 for December 1, 2009, were much higher than I could afford" [CR 39, ¶1]. She added, "Later in July 2009, Ms. Bell sent me a different Stipulation Agreement, which only changed the dates of the payments, I again complained to her that I could not afford the payments" [CR 39, ¶2].

19

While Burg contends that neither Stipulation Agreement went into effect, either because she did not sign (the first Stipulation Agreement) or because she never made any payment pursuant to either, both Stipulation Agreements provided notice to Burg that Saxon was seeking recovery of only the defaulted loan balance of approximately $39,000.00 [CR 39, ¶2]. The Stipulation Agreements did not seek payment of the accelerated loan balance [CR 68-70, 71-73, 134-136, Recital 4].

Burg also admits that she executed a Home Affordable Modification Trial Period Plan, "I signed [the Home Affordable Modification Trial Period Plan] on or about September 30, 2009, and sent it to Saxon" [CR 40, ¶1]. She also acknowledges that the program was not terminated until February 26, 2010, when she received a termination letter from Saxon [CR 40, ¶1].

Importantly, Burg made one payment pursuant to the terms of the Home Affordable Modification Trial Period Plan [CR 40, ¶1; CR 97, ¶9]. She admits that, "I later made one payment under the [Home Affordable Modification Trial Period Plan]" [CR 40, ¶1]. Burg's last payment was made on or about October 19, 2009 [CR 40, ¶1; CR 97, ¶9]. It was accepted and applied to her account [CR 97, ¶9].

Burg will argue that the Home Affordable Modification Trial Period Plan contained a provision that no payment made would waive acceleration or foreclosure action. The Home Affordable Modification Trial Period Plan provides:

20

When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents. [CR 75, ¶2(e); CR 138, ¶2(e)]

Burg's reliance on this provision is misplaced. She neglects to recognize that Saxon had already abandoned the August 12, 2006 acceleration by way of sending her the Stipulation Agreements and making demand for only the defaulted amount owed of approximately $39,000.00 [CR 68-70, 71-73, 134-136, Recital 4]. The loan was not accelerated on October 1, 2009 when the Home Affordable Modification Trial Period Plan was prepared.

The abandonment of acceleration is further evidenced by the fact that RCS sent Burg a Notice of Default and Intent to Accelerate letter on February 19, 2013 [CR 141-143]. Much like the Stipulation Agreements, RCS only made demand for the total monthly payments then due, June 2008 through February 2013, for a total of $136,457.34, plus late charges and other charges [CR 141].[2]

RCS, by and through its counsel, Hughes Watters Askanase, LLP, also sent a Notice of Acceleration of Texas Non-Recourse Home Equity Loan to Burg on April 26, 2013 [CR 144-145].

---

[2] The total amount due in the February 19, 2013 Notice of Default and Intent to Accelerate was $146,770.14 consisting of total monthly payments due ($136,457.34), late charges ($6,255.70), other fees ($5,339.31), less a credit for unapplied funds ($1,282.21).

21

RCS would have had no reason for sending Burg a new Notice of Default and Intent to Accelerate letter and Notice of Acceleration of Texas Non-Recourse Home Equity Loan unless the August 12, 2008 acceleration had been abandoned.

### D. *Statute of Limitations Restarted Upon Abandonment of Acceleration*

Upon abandonment of acceleration, the note is restored to its original condition, including the note's original maturity date. *Khan*, 371 S.W.3d, 353; *Clawson v. GMAC Mortgage, LLC*, 3:12-CV-00212, 2013 WL 1948128, , *3 (S.D. Tex. May 9, 2013). If a noteholder abandons acceleration, the noteholder need not foreclose within four years from the date of acceleration. *Leonard*, 2014 WL 4161769 at , *4(unpublished).

Because RCS abandoned its original August 12, 2008 acceleration of Burg's Note, the four year limitations period ceased running. Limitations only began running again on April 26, 2013 when RCS mailed Burg the latest Notice of Acceleration of Texas Non-Recourse Home Equity Loan.

### E. *RCS' Counter-Claim for Judicial Foreclosure Was Timely and its Lien is Not Void*

RCS accelerated the maturity of Burg's loan on April 26, 2013 [CR 144-145]. Pursuant to the requirements in TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a), RCS would need to initiate an action to foreclose on the Property no later than four years after April 26, 2013. Put another way, RCS would have to

22

initiate an action for judicial foreclosure on or before April 26, 2017. RCS clearly did so.

RCS filed its counter-claim for judicial foreclosure on October 17, 2013 [CR 7-14]. RCS' counter-claim for judicial foreclosure was filed well before April 26, 2017 and well within the limitations period commencing at acceleration of the loan's maturity, occuring on April 26, 2013.

Since RCS filed its counter-claim for judicial foreclosure well before the limitations period expired, RCS' lien on the property is valid and the trial court erred when it determined otherwise.

## PRAYER

Appellant Residential Credit Solutions, Inc. respectfully requests that this Honorable Court reverse the trial court's final summary judgment entered on September 12, 2014 and remand this case back to the trial court for further proceedings. Residential Credit Solutions, Inc. additionally requests such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**HUGHES WATTERS ASKANASE, LLP**


By: ___/s/ Nathan J. Milliron___
     Nathan J. Milliron
     State Bar No. 24030984
     Three Allen Center
     333 Clay, 29th Floor
     Houston, Texas 77002
     (713) 759-0818 (Telephone)
     (713) 759-6834 (Facsimile)
     nmilliron@hwa.com (E-mail)

ATTORNEY FOR APPELLANT, RESIDENTIAL CREDIT SOLUTIONS, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 3,240 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Nathan J. Milliron*
Nathan J. Milliron


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Appellant's Brief was forwarded to all parties and/or their attorneys of record, in accordance with the Texas Rules of Civil Procedure, on this the 1st day of May 2015, addressed as follows:

*Via Electronic Mail at moconnor@oconnorcraig.com*
*and Via Certified Mail/Return Receipt Requested*
Mr. Michael C. O'Connor
O'Connor, Craig, Gould & Evans
2500 Tanglewilde, Suite 222
Houston, Texas 77063

*/s/ Nathan J. Milliron*
Nathan J. Milliron

No. 01-15-00067-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

---

**RESIDENTIAL CREDIT SOLUTIONS, INC.,**
*Appellant,*

**V.**

**MARTHA BURG,**
*Appellee.*

---

Appealed from the 281st Judicial District Court
of Harris County, Texas
Trial Court Cause No. 2013-47157

---

**APPENDIX**

---

| Vernon's Texas Statutes and Codes Annotated |
| --- |
| Civil Practice and Remedies Code (Refs & Annos) |
| Title 2. Trial, Judgment, and Appeal |
| Subtitle B. Trial Matters |
| Chapter 16. Limitations |
| Subchapter B. Limitations of Real Property Actions |

V.T.C.A., Civil Practice & Remedies Code § 16.035

§ 16.035. Lien on Real Property

Currentness

(a) A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.

(b) A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues.

(c) The running of the statute of limitations is not suspended against a bona fide purchaser for value, a lienholder, or a lessee who has no notice or knowledge of the suspension of the limitations period and who acquires an interest in the property when a cause of action on an outstanding real property lien has accrued for more than four years, except as provided by:

  (1) Section 16.062, providing for suspension in the event of death; or

  (2) Section 16.036, providing for recorded extensions of real property liens.

(d) On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void.

(e) If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.

(f) The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

(g) In this section, "real property lien" means:

  (1) a superior title retained by a vendor in a deed of conveyance or a purchase money note; or

  (2) a vendor's lien, a mortgage, a deed of trust, a voluntary mechanic's lien, or a voluntary materialman's lien on real estate, securing a note or other written obligation.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT

A

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1997, 75th Leg., ch. 219, § 1, eff. May 23, 1997.

**Editors' Notes**

**REVISOR'S NOTE**

**2002 Main Volume**

(1) The definition of "lien debt" is added as a drafting convenience and derives from V.A.C.S. Article 5520.

(2) The revised law omits the source law material that provides for a suit to be brought within one year of the effective date of V.A.C.S. Article 5520 (September 3, 1945) or within four years of the maturity date of a lien debt in effect on the effective date of the article because the period has expired.

Notes of Decisions (215)

V. T. C. A., Civil Practice & Remedies Code § 16.035, TX CIV PRAC & REM § 16.035
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**STIPULATION AGREEMENT**
RE: 2000322087
Borrower: Martha Burg
Co-Borrower:

This agreement is entered into as of this _____ 28th _____ day of _____ July, 2009 _____ by and between
Martha Burg _____ ("Mortgagor" or collectively as "Mortgagors"), whose mailing address is
8330 Dumfries Drive  Houston, TX  77086 _____, and Saxon Mortgage Services, Inc.
whose mailing address is 4708 Mercantile Drive North, Ft. Worth, TX 76137.

**RECITALS**

WHEREAS, Mortgagor(s) is indebted to Lender pursuant to that certain Note dated _____ April 4, 2007
in the original principal sum of _____ Two hundred seventy thousand dollars _____ or
$ _____ 270,000.00  (the Note); and

WHEREAS, the note is secured by a Deed of Trust/Mortgage (the "Deed of Trust/Mortgage") of even date on certain real
real property commonly referred to as _____ 8330 Dumfries Drive  Houston, TX  77086 _____ (the "Property"); and

WHEREAS, the Mortgagor(s) acknowledge that the unpaid principal balance as of the date of this agreement is
$ _____ 268,182.48  ; and

WHEREAS, Mortgagor(s) acknowledges that the Note is in default as of this date and Mortgagor is unable to pay the defaulted amount
of _____ $ _____ 39,009.88  (including unpaid regular monthly installments, late penalties and other charges relating to the
default which include, but may not be limited to legal fees, valuation fees, inspection fees and delinquent property taxes), to bring the
note current pursuant to stated terms therein; and

WHEREAS, the Mortgagor represents that Mortgagor will be able to satisfy all outstanding past due payments and charges on the Note
by repaying in full the above-referenced unpaid installments and charges, as well as all currently maturing installments and charges on
or before _____ 12/01/09  and desires that the Noteholder forbear from exercising it's remedies under the Note and
Security Instrument, including acceleration and foreclosure of it's interest in the Property; and

NOW THEREFORE, in consideration of the foregoing and other valuable consideration the receipt and sufficiency of which is hereby
acknowledged, the parties hereto hereby agree as follows:

1) RECITALS. The above recitals are true and correct.

2) FORBEARANCE PAYMENTS. All payments described hereunder shall be made by cashier's check and/or bank wire. If paying by
cashier's check, payments MUST be mailed to the following address:

SAXON MORTAGE SERVICES, INC.
4708 MERCANTILE DRIVE NORTH
FT. WORTH, TX 76137

The payments must be received by the Date of Payment as noted below. Simultaneous with the execution and delivery of this Agreement
Mortgagor shall tender the first payments due under the terms of the Agreement in the amount of _____ $ _____ 2,873.10
and thereafter shall make payments pursuant to the schedule outlined below, consisting of regular monthly payments under the Note,
plus additional amount necessary for the Mortgagor to satisfy the above mentioned past due amounts including late penalties, attorney
fees and other related charges, all as follows:

| DATE OF PAYMENTS | AMOUNT OF PAYMENT |
|---|---|
| 08/01/09 | $ 2,873.10 |
| 09/01/09 | $ 2,873.10 |
| 10/01/09 | $ 2,873.10 |
| 11/01/09 | $ 2,873.10 |
| 12/01/09 | $ 42,444.88 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

**EXHIBIT**
**B**

2000322087

\* It is acknowledge that the payments under the agreement will not cure the arrearage and credit reporting will reflect this.

In addition to the payment amounts set forth above, Mortgagor shall be responsible for any increase in monthly payment amounts which may accrue as the result of changes in interest rate, escrow imposed for taxes and insurance or scheduled principal and interest payment changes and those amounts shall be added to the payment amounts due under this Agreement. Noteholder agrees to waive accruing (but not previously accrued) late charges for the duration of this Agreement so long as the Mortgagor does not breach the terms of this Agreement. If Mortgagor breaches the terms of this Agreement at any time, Noteholder will not waive any late charges. Late charges will again accrue pursuant to the Note and Security Instrument upon the expiration of this Agreement.

3) RESUMPTION OF SCHEDULED MONTHLY PAYMENTS. Following the timely receipt of all payments set forth in Paragraph 2 above, scheduled monthly payments shall resume pursuant to Mortgagor's Note and Security Instrument effective 01/10/09

4) MAILING ADDRESS FOR SCHEDULED MONTHLY PAYMENTS. Upon the resumption of scheduled monthly payments, Mortgagor agrees to make monthly payments to Saxon Mortgage Services, Inc., pursuant to the mailing address recited on the monthly billing statement provided each month.

5) TAXES AND HAZARD INSURANCE. If the Loan is escrowed for property taxes and/or hazard insurance, Mortgagor understands that this Agreement includes an amount to be escrowed by Noteholder to pay for taxes and/or hazard insurance. If taxes or insurance payments increase, Noteholder may increase the portion of the Forbearance Payment allocated for the escrow impound. If taxes or insurance requirements decrease, the Forbearance Payments will not decrease and such surplus shall be applied against the loan delinquency amount. If you are currently including optional insurance payments such as accidental death or disability with your mortgage payment, you must contact your insurance company to confirm status of your policy. Your policy may have cancelled as a result of this default. You are responsible to reinstate your policy directly with the insurance company that has your insurance.

6) FORECLOSURE NOT DISMISSED. Mortgagor specifically understands and agrees that Noteholder shall be entitled to continually postpone the foreclosure action or sale, file notice with the Court, publish the foreclosure, complete service or otherwise take any action reasonably necessary to maintain the pending status of the foreclosure action and that additional costs and fees, including attorney fees, may accrue. Furthermore, if Noteholder, or its designated agent, has submitted any motion or order with the Court, Noteholder shall not be required to withdraw such motion or order by virtue of this Agreement. Rather, the Mortgagor agrees to permit the Court to reconsider such motion and to enter any order reasonably required thereby. Failure by Mortgagor to make any of the payments outlined herein on or before the due date of the Forbearance Payment shall immediately result in this Agreement becoming null and void and shall permit Noteholder to immediately proceed with its remedies, without further notice, including foreclosure of its Security Instrument on Mortgagor property. Mortgagor waives all present and future claims, offsets and defenses arising out of this Agreement or out of Mortgagor

RCS-00076

69

7) FORECLOSURE SALE. Mortgagor understands that if a foreclosure sale is scheduled to occur within 48 hours after Noteholder has received both the signed Agreement and down payment, then Noteholder may not be able to stop the sale. In this event, the down payment will be returned to the Mortgagor and this Agreement shall have no further force and effect. Noteholder assumes no liability for failing to stop the sale or to otherwise unwind, rescind or reverse the sale or vesting should such sale occur within the time period prescribed herein. If in the event the parties agree to undertake any effort to unwind, rescind or reverse the sale, then any attorney fees and costs resulting from such activity shall be added to the Loan delinquency amount.

8) RETURNING OF FUNDS. Should a breach occur in this Agreement, any and all funds paid pursuant to this Agreement are deemed non refundable.

9) NO WAIVER. Mortgagor acknowledges that the Note and Security Instrument are valid and enforceable, and that all of the terms contained therein remain in full force and effect. Mortgagor also acknowledges that the forbearance provided herein shall be without prejudice to the Noteholder's right to exercise its power of sale or exercise any other rights and remedies under the Note and Security Instrument. Neither this Agreement nor the forbearance hereunder shall be deemed to be a waiver or consent to any events of default which have occurred under the Note and Security Instrument or which may in the future occur under the Note and Security Instrument. Mortgagor acknowledges that Noteholder may accept partial payments under this Agreement without waiver of its foreclosure action. Upon any breach of this Agreement, Noteholder may, at its sole option, continue with the foreclosure action currently in place.

10) BINDING AGREEMENT. This Agreement shall be binding upon the parties hereto, their legal representatives, successors and assigns.

11) NOTICES. All notices or other documents under this Agreement shall be in writing and either mailed via certified mail delivery, overnight mail delivery, or by the use of a facsimile machine, addressed to the parties at their current mailing addresses, or one directed to by the Mortgagor.

12) GOVERNING LAW. This Agreement shall be construed in accordance with and governed by the laws of the state in which the Property is located.

13) SEVERABILITY. If any provision in this Agreement, as applied to Mortgagor and Noteholder, is deemed by a court of competent jurisdiction to be invalid or unenforceable for any reason, the remaining provisions of this Agreement shall remain in full force and effect.

14) BANKRUPTCY CONTINGENCY. Mortgagor expressly agrees that while this Agreement is effective, should Mortgagor file a bankruptcy petition pursuant to Title 11 of the United States Bankruptcy code, Mortgagor hereby expressly agree(s) to grant Noteholder immediate relief from automatic stay, and Mortgagor shall execute any and all necessary documents to provide Noteholder with immediate relief from stay.

15) EXECUTION OF THE AGREEMENT. Mortgagor must execute this Agreement and return it with the initial forbearance payment outlined by                          09/01/08 . Failure to return the executed Agreement by this date will result in this Agreement becoming null and void. This Agreement may be executed in two (2) counterparts, each of which shall be deemed an original; but all of which, taken together, shall constitute one and the same instrument.

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS BEEN ADVISED BY LEGAL COUNSEL, OR HAS DECIDED TO PROCEED WITHOUT LEGAL COUNSEL.

IN WITNESS THEREOF, the parties hereto have executed this Forbearance Agreement as of the date and year written in this Agreement.

Mortgagor _____

Mortgagor _____

Saxon Mortgage Services, Inc.

By: _____
Sarah Bell
Special Servicing Representative

## STIPULATION AGREEMENT
### RE: 20080022007
### Borrower: Martha Burg
### Co-Borrower:

This agreement is entered into as of this _____ 25th _____ day of _____ July, 2008 _____ by and between Martha Burg ("Mortgagor" or collectively as "Mortgagors"), whose mailing address is 5338 Dumfries Drive  Houston, TX 77096 _____, and Saxon Mortgage Services, Inc. whose mailing address is 4708 Mercantile Drive North, Ft. Worth, TX 76137.

### RECITALS

WHEREAS, Mortgagor(s) is indebted to Lender pursuant to that certain Note dated _____ April 4, 2007 in the original principal sum of _____ Two hundred seventy thousand dollars _____ or $ _____ 270,000.00 _____ (the Note); and

WHEREAS, the note is secured by a Deed of Trust/Mortgage (the "Deed of Trust/Mortgage") of even date on certain real real property commonly referred to as _____ 5338 Dumfries Drive  Houston, TX 77096 _____ (the "Property"); and

WHEREAS, the Mortgagor(s) acknowledge that the unpaid principal balance as of the date of this agreement is $ _____ 266,122.60 _____; and

WHEREAS, Mortgagor(s) acknowledges that the Note is in default as of this date and Mortgagor is unable to pay the defaulted amount of $ _____ 23,525.55 _____ (including unpaid regular monthly installments, late penalties and other charges relating to the default which include, but may not be limited to legal fees, valuation fees, inspection fees and delinquent property taxes), to bring the note current pursuant to stated terms therein; and

WHEREAS, the Mortgagor represents that Mortgagor will be able to satisfy all outstanding past due payments and charges on the Note by repaying in full the above referenced unpaid installments and charges, as well as all currently maturing installments and charges on or before _____ 12/15/2008 _____ and desires that the Noteholder forbear from exercising its remedies under the Note and Security Instrument, including acceleration and foreclosure of its interest in the Property and

NOW THEREFORE, in consideration of the foregoing and other valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1) RECITALS. The above recitals are true and correct.

2) FORBEARANCE PAYMENTS. All payments described hereunder shall be made by cashier's check and/or bank wire. If paying by cashier's check, payments MUST be mailed to the following address:

SAXON MORTGAGE SERVICES, INC.
4708 MERCANTILE DRIVE NORTH
FT. WORTH, TX 76137

The payments must be received by the Date of Payment as noted below. Simultaneous with the execution and delivery of this Agreement Mortgagor shall tender the first payments due today the Sum of the Agreement in the amount of $ _____ 2,573.19 and thereafter shall make payments pursuant to the schedule outlined below, consisting of regular monthly payments under the Note, plus additional amount necessary for the Mortgagor to satisfy the above mentioned past due amounts including late penalties, attorney fees and other related charges, all as follows:

| DATE OF PAYMENTS | AMOUNT OF PAYMENT |
|---|---|
| 08/15/2008 | 2,573.19 |
| 09/15/2008 | 2,573.19 |
| 10/15/2008 | 2,573.19 |
| 11/15/2008 | 2,573.19 |
| 12/15/2008 | 12,444.55 |

EXHIBIT
C
tabbies

* It is acknowledged that the payments under the agreement will not cure the arrearage and credit reporting will reflect this.

In addition to the payment amounts set forth above, Mortgagor shall be responsible for any increase in monthly payment amounts which may occur as the result of changes in interest rate, escrow impound for taxes and insurance or scheduled principal and interest payment changes and these amounts shall be added to the payment amounts due under this Agreement. Noteholder agrees to waive accruing (but not previously accrued) late charges for the duration of this Agreement as long as the Mortgagor does not breach the terms of this Agreement. If Mortgagor breaches the terms of this Agreement at any time, Noteholder will not waive any late charges. Late charges will again accrue pursuant to the Note and Security Instrument upon the expiration of this Agreement.

3) RESUMPTION OF SCHEDULED MONTHLY PAYMENTS. Following the timely receipt of all payments set forth in Paragraph 2 above, scheduled monthly payments shall resume pursuant to Mortgagor's Note and Security Instrument effective 01/01/2009

4) MAILING ADDRESS FOR RESUMED MONTHLY PAYMENTS. Upon the resumption of scheduled monthly payments, Mortgagor agrees to make monthly payments to Saxon Mortgage Services, Inc. pursuant to the mailing address settled on the monthly billing statement provided each month.

5) TAXES AND HAZARD INSURANCE. If the Loan is escrowed for property taxes and/or hazard insurance, Mortgagor understands that this Agreement includes an amount to be escrowed by Noteholder to pay for taxes and/or hazard insurance. If taxes or insurance payments increase, Noteholder may increase the portion of the Forbearance Payment allocated for the escrow impound. If taxes or insurance requirements decrease, the Forbearance Payments will not decrease and such surplus shall be applied against the loan delinquency amount. If you are currently including optional insurance payments such as accidental death or disability with your mortgage payment, you must contact your insurance company to confirm status of your policy. Your policy may have cancelled as a result of this default. You are responsible to reinstate your policy directly with the insurance company that has your insurance.

6) FORECLOSURE NOT DISMISSED. Mortgagor specifically understands and agrees that Noteholder shall be entitled to continually postpone the foreclosure action or sale, file motions with the Court, publish the foreclosure, complete service or otherwise take any action reasonably necessary to maintain the pending status of the foreclosure action and that additional costs and fees, including attorney fees, may accrue. Furthermore, if Noteholder, or its designated agent, has submitted any motion or order with the Court, Noteholder shall not be required to withdraw such motion or order by virtue of this Agreement. Rather, the Mortgagor agrees to permit the Court to consider such motion and to enter any order reasonably required thereby. Failure by Mortgagor to make any of the payments outlined herein on or before the due date of the Forbearance Payment shall immediately result in this Agreement becoming null and void and shall permit Noteholder to immediately proceed with the remedies, without further notice, including foreclosure of its Security Instrument on Mortgagor property. Mortgagor waives all present and future claims, offsets and defenses arising out of this Agreement or out of Mortgagor

RCS-00079

**7) FORECLOSURE SALE.** Mortgagor understands that if a foreclosure sale is scheduled to occur within 48 hours after Noteholder has received both the signed Agreement and down payment, then Noteholder may not be able to stop the sale. In this event, the down payment will be returned to the Mortgagor and this Agreement shall have no further force and effect. Noteholder assumes no liability for failing to stop the sale or to otherwise unwind, rescind or reverse the sale or vesting should such sale occur within the time period prescribed herein. In the event the parties agree to undertake any effort to unwind, rescind or reverse this sale, then any attorney fees and costs resulting from such activity shall be added to the Loan delinquency amount.

**8) RETURNING OF FUNDS.** Should a breach occur in this Agreement, any and all funds paid pursuant to this Agreement are deemed non refundable.

**9) NO WAIVER.** Mortgagor acknowledges that the Note and Security Instrument are valid and enforceable, and that all of the terms contained therein remain in full force and effect. Mortgagor also acknowledges that the forbearance provided herein shall be without prejudice to the Noteholder's right to exercise the power of sale or exercise any other rights and remedies under the Note and Security Instrument. Neither this Agreement nor the forbearance hereunder shall be deemed to be a waiver of or consent to any events of default which have occurred under the Note and Security Instrument or which may in the future occur under the Note and Security Instrument. Mortgagor acknowledges that Noteholder may accept partial payments under this Agreement without waiver of its foreclosure action. Upon any breach of this Agreement, Noteholder may, at its sole option, continue with the foreclosure action currently in place.

**10) BINDING AGREEMENT.** This Agreement shall be binding upon the parties hereto, their legal representatives, successors and assigns.

**11) NOTICES.** All notices or other documents under this Agreement shall be in writing and either mailed via certified mail delivery, overnight mail delivery, or by the use of a facsimile machine, addressed to the parties at their current mailing addresses, or one directed to by the Mortgagor.

**12) GOVERNING LAW.** This Agreement shall be construed in accordance with and governed by the laws of the state in which the Property is located.

**13) SEVERABILITY.** If any provision in this Agreement, as applied to Mortgagor and Noteholder, is deemed by a court of competent jurisdiction to be invalid or unenforceable for any reason, the remaining provisions of this Agreement shall remain in full force and effect.

**14) BANKRUPTCY CONTINGENCY.** Mortgagor expressly agrees that while this Agreement is effective, should Mortgagor file a bankruptcy petition pursuant to Title 11 of the United States Bankruptcy code, Mortgagor hereby expressly agrees to grant Noteholder immediate relief from automatic stay, and Mortgagor shall execute any and all necessary documents to provide Noteholder with immediate relief from stay.

**15) EXECUTION OF THE AGREEMENT.** Mortgagor must execute this Agreement and return it with the initial forbearance payment outlined by _____08/10/2009_. Failure to return the executed Agreement by this date will result in this Agreement becoming null and void. This Agreement may be executed in two (2) counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

MORTGAGOR ACKNOWLEDGES THAT MORTGAGOR HAS BEEN ADVISED BY LEGAL COUNSEL, OR HAS DECIDED TO PROCEED WITHOUT LEGAL COUNSEL.

IN WITNESS THEREOF, the parties hereto have executed this Forbearance Agreement as of the date and year written in this Agreement.

_Martha Burg_
_____
Mortgagor

_____
Mortgagor

Saxon Mortgage Services, Inc.

By: _____
     Sarah Bell
Special Servicing Representative

73

Investor Loan # : 2000322067/ 1⊙⊘⊘⊢3

# HOME AFFORDABLE MODIFICATION
# TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date:    October 1, 2009

Borrower ("I") ¹: MARTHA A. BURG

Lender ("Lender"):
Federal National Mortgage Association

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): April 4, 2007

Loan Number:  23062193

Property Address ("Property"):
5330 DUMFRIES DR
HOUSTON, TX 77096

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.    **My Representations.**    I certify, represent to Lender and agree:

A.    I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.    I live in the Property as my principal residence, and the Property has not been condemned;

¹If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION  - TRIAL PERIOD PLAN
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3156 3/09 (rev. 3/09)

D1410J    (0903)
Page 1 of 4



EXHIBIT
D

RCS-00092

137

C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

D.  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

E.  Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.  If Lender requires me to obtain credit counseling, I will do so.

2.  **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,747.03.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $ 1,747.03 | 10/01/2009 |
| 2 | $ 1,747.03 | 11/01/2009 |
| 3 | $ 1,747.03 | 12/01/2009 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Plan;

B.  Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.  The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.  If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION - TRIAL PERIOD PLAN
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3156 3/00 (rev. 3/09)

D14103   (0903)
Page 2 of 4

**RCS-00093**

138

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as necessary, to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable.

3.  **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

4.  **Additional Agreements.** I agree to the following:

    A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

    B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

    C.  Intentionally Deleted.

    D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

    E.  That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.
SIGNATURE PAGE FOLLOWS.

HOME AFFORDABLE MODIFICATION - TRIAL PERIOD PLAN
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3156 3/09 (rev. 3/09)
D14103    (0903)
Page 3 of 4

RCS-00094

In Witness Whereof, the Lender and I have executed this Plan.

_Martha a. Burg_ _____ (Seal)   9-30-09 MB
MARTHA A. BURG                          -Borrower        Date

_____ (Seal)   _____
                                   -Borrower        Date

_____ (Seal)   _____
                                   -Borrower        Date

_____ (Seal)   _____
                                   -Borrower        Date

Federal National Mortgage Association, by Saxon Mortgage Services, Inc., as its attorney-in-fact   (Seal)
                                                                                                   -Lender

By: _Larry Schwartz_ _____ (Seal)   10/21/09
                                             Date

HOME AFFORDABLE MODIFICATION - TRIAL PERIOD PLAN
Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services ©2009

Form 3150 3/09 (rev. 3/09)
D14103   (0003)
Page 4 of 4

RCS-00095